J-A16018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS DUFF CROCK | |
| Appellant | No. 870 WDA 2013 |

Appeal from the Order May 13, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-SA-0002478-2012

BEFORE:  DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 21, 2014**

Thomas Duff Crock appeals *pro se* from the order entered on May 13, 2013, in the Court of Common Pleas of Allegheny County, following his convictions of the summary offenses of driving while his operator's license was suspended, and exhibiting a foreign license when his Pennsylvania license was suspended,[1] after a summary trial *de novo*.  The trial court found Crock not guilty of failing to yield to a traffic control device.[2]  The trial court ordered Crock to pay an aggregate fine of $400.00.  In this appeal, Crock challenges the sufficiency of the evidence.  Alternatively, Crock

_____

[1] *See* 75 Pa.C.S. §§ 1543(a), and 1573(a), respectively.

[2] *See* 75 Pa.C.S. § 3111(a).

challenges the denial of his oral suppression motion. Based upon the following, we affirm.

This case arose on September 5, 2012, when Crock was issued citations for driving while operating privilege is suspended or revoked, exhibiting a foreign license when his license was suspended, as well as a citation for turning movements and required signals.[3] When Crock appeared before the magisterial district judge, the charge for turning movements and required signals was replaced with failing to yield to a traffic control device, and Crock was convicted of all three offenses. Crock then filed a *pro se* appeal for a summary trial *de novo*, which the court held on May 13, 2013. Following the summary trial *de novo*, at which Crock proceeded *pro se*, the court convicted Crock as stated above, and imposed a $400.00 fine Crock. Crock timely filed a notice of appeal *pro se*.[4]

_____

[3] 75 Pa.C.S. § 3334(a).

[4] On May 23, 2013, the court ordered Crock to file a concise statement of errors complained of on appeal within 21 days, pursuant to Pa.R.A.P. 1925(b). The order was docketed on May 29, 2013. Thereafter, Crock did not comply with the court's Rule 1925(b) order, and the court has opined that Crock's failure constitutes waiver. ***See*** Trial Court Opinion, 6/28/2013.

However, Crock contends, and the record reflects, that the docket does not indicate that the court's Rule 1925(b) order was mailed to Crock, as is required by Pa.R.Crim.P. 114. ***See Commonwealth v. Hart***, 911 A.2d 939, 940 (Pa. Super. 2006) ("A docket entry shall promptly be made containing the date and manner of service of the order. Pa.R.Crim.P. 114(C)."). Furthermore, the Commonwealth "agrees that the Allegheny County Criminal Court's docket does not show that the trial court's order to
*(Footnote Continued Next Page)*

We first address Crock's sufficiency challenge.[5]   According to Crock, "[his] unrebutted testimony established that, despite complying with his obligations under 75 Pa.C.S. [§] 1515(a) [Notice of change of name or address], PennDOT sent his notification of license suspension to the wrong address," and, therefore, the Commonwealth failed to prove he had actual notice of the license suspension. Crock's Brief at 18.   Specifically, Crock argues:

> Despite compliance with this statutory obligation [referring to 75 Pa.C.S. § 1515(a)], PennDOT sent [his] Notice of License Suspension to P.O. Box 16394 Pittsburgh, PA 15242 — an address [he] discontinued years prior to the license suspension which gave rise to his charge[s] in this case.

*(Footnote Continued)* ─────────────────────

file a concise statement was mailed to [Crock's] address."  Commonwealth's Brief at 2, n.1.  Therefore, given that the docket does not evidence the date and manner of service of the court's May 23, 2013 order, we decline to find waiver.

[5] Section 1543 of the Motor Vehicle Code provides, in relevant part, that "any person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege has been restored is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $ 200."  75 Pa.C.S. § 1543(a).

Section 1573 of the Motor Vehicle Code prohibits "display [of] a license or permit issued by any other jurisdiction or otherwise during the suspension or after the recall, cancellation, revocation or disqualification until the individual's operating privilege has been restored by the department." 75 Pa.C.S. § 1573(a).

*Id.* at 15. ***See also*** Crock's Reply Brief at 4 ("[PennDOT's] Certified Driver History of/for [Crock] displays an incorrect mailing address, 'PO Box 16394, Pittsburgh, Pa 15242'").[6]

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> "The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt."

> In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence

_____

[6] Crock, in his reply brief, further asserts: "The Allegheny County Dept. of Court Records sent their payment 'request', and warning/threat of imminent license suspension to an incorrect address, PO BOX 16394, Pittsburgh, Pa 15242. [PennDOT] apparently relied upon/used that same incorrect mailing address in mailing the Department's notice of suspension to [Crock]." Crock's Reply Brief at 4–5.

produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vetrini*, 734 A.2d 404, 406–407 (Pa. Super. 1999) (citations omitted).

Pennsylvania case law is well settled with regard to the necessity of "actual notice to uphold a conviction under Section 1543(a). *Commonwealth v. Baer,* 682 A.2d 802, 805 (Pa. Super. 1996) (citations omitted). "Proof of actual notice of the suspension of an appellant's operator's license is necessary to establish an essential element of the crime of operating a motor vehicle while one's operator's license is suspended." *Id.* (citations omitted). Merely establishing that notice was mailed is not sufficient by itself to show actual notice. *Vetrini, supra*, 734 A.2d at 407. However, "[n]otice is a question of fact, and anything that proves knowledge or is legal evidence showing that knowledge exists can be sufficient." *Id.*

Evidence of mailing of the notice coupled with some additional demonstration of knowledge can suffice to establish actual notice beyond a reasonable doubt. *Id.* Therefore,

> [f]actors that a finder of fact may consider in determining circumstantially or directly whether a defendant had actual notice of his or her suspension include, but are not limited to, evidence that the defendant was verbally or in writing apprised of the license suspension during the trial or a plea, statements by the accused indicating knowledge that he … was driving during the period in which his … license had been suspended, evidence that PennDOT sent by mail the notice of the suspension to appellant's current address, evidence that Penndot's notice of suspension was not returned as undeliverable,

> attempts by the accused to avoid detection or a citation, and any other conduct demonstrating circumstantially or directly appellant's knowledge of the suspension or awareness of guilt.
>
> [***Commonwealth v. Zimmick***, 539 Pa. 548, 555-556, 653 A.2d 1217, 1221 (1995)]. Hence the sending of written notice to the appellant's current address is but one of many factors that may be considered. It is not obligatory that any combination of factors must be present. ***See, e.g., Commonwealth v. Dietz***, 423 Pa. Super. 366, 621 A.2d 160, *appeal denied*, 535 Pa. 634, 631 A.2d 1007 (1993) (holding driver's flight from crash site and misleading conduct demonstrated that driver knew he was not permitted to drive; and driver's failure to produce a driver's license is presumptive knowledge of suspension).

***Id.***, 734 A.2d at 408.

Here, at the summary trial *de novo*, the Commonwealth presented the testimony of Officer Turack. Officer Turack testified that on September 5, 2012,[7] after he initiated a traffic stop of Crock's vehicle,

> [Crock] was immediately combative. He was throwing his arms about the vehicle, he was shouting and cursing. Upon approach to the vehicle **I requested his driving information. He failed to provide that to me.** He was screaming about being pulled over.
>
> **I was able to get the information from him, at which time he presented me with a – I believe it was an Ontario driver's license**, which was checked through NCIC and found to be current and valid, at which point I requested our dispatch check Mr. Crock by name and date of birth through the state of Pennsylvania, **at which point it was determined that he had a suspended driver's license**.

_____

[7] While the officer testified that the date of the incident was September 15, 2012, ***see*** N.T. (corrected), 5/13/2013, at 14, the citations reflect the date of the incident as September 5, 2012. ***See id.*** at 30.

Mr. Crock became increasingly combative and aggressive during the traffic stop. …

N.T. (corrected), 5/13/2013, at 13 (emphasis added). Furthermore, the Commonwealth, through Officer Turack, offered into evidence PennDOT's certified driving record for Crock, which was admitted into evidence over objection.[8] The certified driver's record demonstrated that notice of Crock's license suspension, effective as of May, 2012, **had been mailed on April 17, 2012**,[9] and that September 18, 2012 was the date of restoration of driving privileges. **See** N.T. (corrected), 5/13/2013, at 29.

On cross examination, when Crock questioned Officer Turack, he asked "whenever this traffic stop occurred, I believe I provided you with a copy of this letter." N.T. (corrected), 5/13/2013, at 27. Crock then identified the letter for the record as follows: "It is a letter from PennDOT dated or processed 9-14 of 11 saying Your driving privilege is restored effective 9-14 of '11." N.T. (corrected), 5/13/2013, at 27–28. Although the court did not formally admit the letter, Crock handed a copy of the letter to the court. Officer Turack testified he did not recall that letter. **See id.** at 28. On cross examination, Officer Turack further testified that the notice of license

_____

[8] **See** N.T. (corrected), 5/13/2013, at 15.

[9] The license suspension was in connection with a violation that occurred on June 7, 2007. **See** 75 Pa.C.S. § 1533, "Suspension of operating privilege for failure to respond to citation."

suspension is mailed to "wherever your listed address is on your driver's license." ***See id.*** at 34.

Following Officer Turack's testimony, Crock showed the court a "bag for groceries," containing "correspondence from [PennDOT] to me – I'm not going to put them in the record – but to corroborate that the department has my correct mailing address[.]" N.T. (corrected), 5/13/2013, at 40. Crock maintained PennDOT "had my address and didn't notify me." N.T. (corrected), 5/13/2013, at 43.

Crock, in his argument to this Court, relies upon ***Commonwealth v. Taylor***, 568 A.2d 1320, 1324 (Pa. Super. 1990), wherein this Court determined that the Commonwealth's evidence was insufficient to prove defendant received actual notice of his license suspension because there was unrebutted evidence that the defendant no longer resided at the address where his license was registered. ***See*** Crock's Brief at 16, 18. We are not persuaded that ***Taylor*** applies to this case.

Here, Officer Turack testified that the notice of license suspension was mailed on April 17, 2012, and that notice is mailed to the address listed on the driver's license. ***See*** N.T. (corrected), 5/13/2013, at 29, 34. Moreover, at trial, Crock acknowledged receiving a restoration of operating privileges letter from PennDOT, dated September 14, 2011. ***Id.*** at 27–28. This letter is consistent with the driver's history recorded on PennDOT's Certified

Driver's Record for Crock.[10] There was no evidence that Crock had changed his address since his driving privileges were restored. Finally, Crock failed to produce his Pennsylvania driver's license when he was stopped by Officer Turack.

The facts of this case more closely align with **Commonwealth v. Gray**, 514 A.2d 621 (Pa. Super. 1986), *appeal denied,* 523 A.2d 345 (Pa. 1987). In **Gray**, this Court found evidence that notice was mailed to the defendant's correct address coupled with the fact the defendant had surrendered his license on a previous, recent suspension for which notice was mailed to the same address, as well as evidence that he was not carrying his license when he was stopped, sufficient to establish he had received actual notice. **Id.** at 622–623. Like the defendant in **Gray** who had received an earlier notice of suspension, Crock had received an earlier, recent notice of restoration of driving privileges, notwithstanding the P.O. Box address listed on his certified driver's history. Also, there was evidence that the notice of suspension had been mailed,[11] no evidence that Crock's address changed since his receipt of the PennDOT restoration letter, and although apparently having had his license restored, Crock did not have his

---

[10] **See** PennDOT Certified Driver's History for Thomas Duff Crock, dated 7/2/2013, filed 5/13/2013, at 4 ("Action: Restoration of operating privileges Sep 14 2011").

[11] There was no evidence indicating that the notice was returned as undeliverable.

Pennsylvania driver's license when stopped by Officer Turack. Therefore, on this record, and applying **Gray**, we find the Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Crock had actual notice of the license suspension.

Accordingly, viewing all of the evidence and any inferences drawn therefrom in the light most favorable to the Commonwealth as the verdict winner, we conclude the evidence was sufficient to support Crock's convictions pursuant to Section 1543(a) and 1573(a). Therefore, no relief is due on Crock's sufficiency claim.[12]

Nor do we find merit in Crock's alternative argument that the court's order denying his oral motion to suppress must be reversed and the case remanded because the seizure of his vehicle was effectuated without probable cause. Our standard and scope of review are well settled:

> The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the rulings of a suppression court, this Court considers only the evidence of the prosecution and so much of the evidence for the defense as remains

---

[12] Crock asserts that "as [his] driving record evidences, [he] is well-acquainted with the Pennsylvania Vehicle Code, and thus would not have purposefully rendered himself subject to prosecution under 75 Pa.C.S. § 1573(a) by displaying a foreign license while driving operating privileges were suspended." Crock's Brief at 17–18, n.2. This argument, however, ignores our standard of review to view the evidence in the light most favorable to the Commonwealth as verdict winner.

> uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted), *appeal denied*, 50 A.3d 124 (Pa. 2012).

Crock argues that because the officer testified at the summary trial *de novo* that he had no evidence to support the amended charge of failure to yield to a traffic control device, 75 Pa.C.S. § 3111, the seizure of his vehicle was effectuated without probable cause. **See** Crock's Brief at 21; N.T. (corrected), 5/13/2013, at 21–22. Crock's argument, however, is unavailing.

As already discussed, Officer Turack testified at trial that he had observed Crock driving at a high rate of speed around a bus, swerve in front of it without signaling, and then spike the brakes, causing the bus driver to lock up his brakes and the bus passengers to be jolted forward. N.T. (corrected), 5/13/2013, at 12–13. The officer's observation of Crock's failure to use a signal while making a lane change created probable cause to suspect a violation of Section 3334 ("turning movements and required signals").[13] **See Commonwealth v. Brown**, 64 A.3d 1101, 1105–1106

---

[13] Section 3334 of the Pennsylvania Motor Vehicle Code provides, in relevant part:

    (a)   *General rule.* --Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter

*(Footnote Continued Next Page)*

(Pa. Super. 2013), *appeal denied*, 79 A.3d 1096 (Pa. 2013) (finding officer had probable cause to stop truck driver after observing driver make left turn without using turn signal). The fact that the officer admitted he had no evidence Crock violated the Motor Vehicle Code with respect to the **amended** charge is irrelevant to the issue of whether the stop was valid in the first instance. Furthermore, even dismissal of the original Section 3334 charge would not require suppression, since the proof beyond a reasonable doubt standard applicable at trial has no bearing on the probable cause analysis attendant to a suppression motion. For these reasons, Crock's suppression argument fails.

*(Footnote Continued)* ——————————

> the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.
>
> (b) *Signals on turning and starting.* --At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S. § 3334(a), (b).

Having reviewed the contentions of Crock, and having found them to be meritless, we affirm.[14]

Order affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2014

---

[14] Although Crock raises an additional argument in his reply brief that the judge was biased against him, citing his motion for recusal that the trial judge denied at the outset of the summary trial *de novo*, this argument is subject to waiver since it is well settled that it is improper to raise new issues in a reply brief. **See Commonwealth v. Williams**, 909 A.2d 383, 386 n.6 (Pa.Super. 2006).