*Edward F. Dwyer, Irving I. Zimmerman,* for petitioner.

*Higgins & Silverstein, John R. Higgins, Sidney Silverstein, Richard A. Baldwin,* for respondent.

SALVATORE SCHIANO *vs.* McCARTHY FREIGHT SYSTEM, INC.

APRIL 14, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

254

CONDON, J. This is an action of trespass on the case for negligence that was tried to a jury in the superior court and resulted in a verdict for the plaintiff. The defendant moved for a new trial which was denied by the trial justice. The case is here on defendant's exception to such denial and on numerous other exceptions taken during the trial, only nineteen of which, however, are being pressed, the remainder having been expressly waived. There appears to be some confusion in the numbering of the exceptions in the defendant's bill of exceptions. However, we have followed the exceptions as they have been numbered and argued in defendant's brief.

Plaintiff's cause of action arose out of an accident in which he was injured while assisting an employee of the defendant in lifting a barrel of gold and silver scrap weighing between 300 and 400 pounds. Defendant, a common carrier by motor truck, had undertaken at the request of Handy & Harman, bullion refiners, to pick up such barrel at the shop of Bojar Company, manufacturing jewelers, on Stewart street in the city of Providence and deliver it to Handy & Harman. The barrel belonged to them and the scrap belonged to Bojar Company. Defendant sent its driver Joseph Madieros to pick up the barrel. When he arrived at the Bojar Company shop and saw the barrel he told Leo Bojar, one of the owners of that firm, that it was too heavy for one man to handle. Bojar testified that Madieros asked for assistance. Madieros denied that he made such a request. In any event he accepted the assistance of the plaintiff who was told by Leo Bojar to give Madieros "a hand" with the barrel.

Plaintiff was a "drop hand" in the Bojar Company's shop, and although it was no part of his duties in the course of such employment to lift a barrel such as the one in question

he proceeded to do what he was told. However, it is important to note that he was not told to handle the barrel alone, and he did not do so. He acted in conjunction with and under the supervision of Madieros who had picked up such freight before at Bojar Company's shop and was experienced in handling it. Madieros did not ask the plaintiff to help him until he, Madieros, had personally rolled the barrel onto an elevator and had taken it down to the ground floor of the building. Bojar Company's shop was situated on the fourth floor.

After Madieros had operated the elevator to within about four feet of the ground floor he stopped it and opened a door which led from the elevator well to the outside of the building. He had previously backed defendant's truck to within about three feet of this door so that he could transfer the barrel from the elevator to the truck. When he was ready to make such transfer he instructed plaintiff how to handle the barrel and then without assistance from the plaintiff he moved it so that about one half of it was beyond the outside edge of the elevator platform.

With the barrel upright in that position, Madieros jumped down from the elevator and stood on one side of the barrel. The plaintiff did likewise and took a position on the opposite side. As they were thus placed, at a signal from Madieros they both began to lift the barrel. When they got it free of the elevator floor it commenced to shift toward the plaintiff and knocked him down. There is a conflict in the testimony as to what caused the barrel to fall against the plaintiff.

He testified that as they started to lift the barrel off the elevator "All of a sudden" Madieros hollered "Let go," and stepped back; that the barrel then began to roll toward plaintiff; that he was in such a position he could not let go and he tried to push it back on the elevator; that the barrel forced him against the building; and that it knocked him to the ground and hit his right leg and foot. He further testified that Madieros then asked if he was hurt and

when he, plaintiff, replied "Yes," Madieros said: "I should have used the plank."

Madieros testified that they had not removed the barrel from the elevator when plaintiff said that it was slipping and he could not hold it; that he then told plaintiff to let go of the barrel and let it hit the ground; that he, Madieros, tried for two or three seconds to hold the barrel to prevent it from falling but it fell and plaintiff went down with it; and that after striking the sidewalk the barrel bounced back and hit plaintiff in the leg as he was sitting on the ground. After the accident Madieros lowered the elevator to the floor and rolled the barrel onto it. He then lowered the elevator further to the cellar where he found a plank on which he rolled the barrel onto the truck. He testified that he did this without assistance by means of the plank which he called a "skid" or "brow." Apparently on former occasions in loading heavy freight onto the truck at this location he had used the skid and knew it was kept somewhere in the building.

On these facts defendant contends that he was entitled to have the jury instructed as follows: "If you find that the plaintiff was aware of the heaviness of the barrel to be moved and was instructed properly as to a proper way to lift and move the barrel by the truck driver of the defendant and knowing such facts entered upon the attempt to move the barrel you are entitled to find that plaintiff knowing the danger, did assume the risk involved and therefore defendant would not be liable to the plaintiff for subsequent injury." Such request for instructions was refused by the trial justice and defendant excepted thereto. This is defendant's forty-seventh exception, but it has been argued first and at greater length than any other exception, apparently because it is defendant's main contention.

The doctrine of assumed risk is familiar in the law of master and servant and has been recognized by this court. *Boettger* v. *Mauran*, 64 R. I. 340. In *Kelley* v. *Silver Spring*

*Bleaching & Dyeing Co.,* 12 R. I. 112, 116, it was held that "a person who voluntarily enters a dangerous service, knowing the danger, takes the risk upon himself and cannot look to his employer for damages if he is injured." This court has also held that in an action by a servant against his master the declaration must negative the issue of such a risk. *Dalton* v. *Rhode Island Co.,* 25 R. I. 574. In the first trial of the case at bar the evidence failed to show that plaintiff was a servant of the defendant. *Schiano* v. *McCarthy Freight System, Inc.,* 72 R. I. 455. The additional evidence which was adduced at the trial now under review does not lead us to alter that finding. But the doctrine of assumed risk is not confined to the relation of master and servant. *James* v. *R. I. Auditorium, Inc.,* 60 R. I. 405. 1 Shearman and Redfield on Negligence (rev. ed.) 328, §135. The defense is grounded on the maxim *volenti non fit injuria.* Conceivably it could be applicable to a situation such as the instant one notwithstanding the non-existence of the relation of master and servant, provided the facts in evidence disclose the existence of a risk obviously dangerous, known to and voluntarily incurred by the plaintiff, and which was the proximate cause of his injury. The question here is whether sufficient facts are present to warrant submitting the issue of assumed risk to the jury. If so it ought to have been instructed in the correct application of that doctrine to the evidence.

Assuming for the moment that the requested instruction properly phrases the issue consistently with the evidence, do the facts warrant its submission to the jury? We think not. Clearly this accident did not result from a risk which plaintiff voluntarily assumed and which he knew to be dangerous. He did not undertake to move the barrel alone, but rather to move it jointly with another who he understood was experienced in handling it. There was no evidence that the barrel was dangerous for two men to lift and certainly plaintiff did not know that it was. On the contrary, as far as he knew, it was one that two men could

handle but probably was too heavy for one to handle alone. Moreover it is clear from the evidence that the jury could find that the barrel fell and caused injury to the plaintiff, not because it was too heavy for the two men who undertook to lift it, but because of the negligence of 'Madieros in letting go of the barrel when the plaintiff was in a difficult predicament, or in not properly supervising the lifting of the barrel so that the weight would not shift but would be evenly distributed between them.

Defendant cites a number of cases in support of its contention, the leading one being *Miner* v. *Connecticut River R. R.,* 153 Mass. 398. But neither that case nor any of the others discloses facts like those in the instant case. For example, in the *Miner* case the plaintiff's driver deliberately led his horse close to an unguarded wall alongside a railroad track which he knew to be dangerous. The horse became frightened by the noise of bumping freight cars and backed over the wall and was killed. Merely to state those facts shows how greatly different they were from those in the case at bar. There the court held that it was for the jury to say whether, independently of the question of contributory negligence on the part of plaintiff's driver, he had voluntarily assumed the risk of a known danger.

On the other hand there are numerous cases like the one at bar where in the circumstance of an unexpected negligent act of a coemployee the doctrine of assumed risk was held not to be applicable. *Graber* v. *Duluth, South Shore & Atl. Ry.,* 159 Wis. 414; *Reed* v. *Director General of Railroads, etc.,* 258 U. S. 92; *Cahill* v. *Illinois Central R. R.,* 148 Iowa 241; *Reed* v. *Dickinson,* 184 Iowa 1363; *Currtwright* v. *Chicago, Milwaukee & St. Paul Ry.,* 197 Iowa 1216; *Girl* v. *United States R. R. Adm'n,* 194 Iowa 1382. In those cases the court held substantially that where a coemployee was guilty of a definite specific act of negligence which could not have been foreseen or anticipated by the plaintiff and which directly resulted in an

injury to him it could not be said that the plaintiff had assumed the risk which caused the injury.

The facts of the *Cahill* case, *supra,* closely resemble those in the case at bar. There the plaintiff and others were moving a push car from the railroad tracks when one of the others suddenly let go of the car and as a result it struck and injured the plaintiff.

In the *Reed* case, *supra,* plaintiff and another were removing rails when, without indicating to plaintiff as he was required to do, the other suddenly jerked loose his end of the rail causing it to strike the plaintiff's bar which hit and injured the plaintiff.

Another case very much like the instant case is *Great Western Land Co.* v. *Barker,* 164 Ark. 587, cited by the plaintiff. There the plaintiff was working with two other persons hauling and piling stumps. At the time of the accident they were placing a stump on a pile about three feet high when, without warning, the two relaxed their hold on the stump to get a new hold causing the entire weight to come back upon the plaintiff resulting in injury to him. The court held that such facts raised an issue of negligence and nothing else and that there was no room for the doctrine of assumed risk.

Clearly in the case at bar there was no occasion for charging the jury as requested by defendant. Indeed to do so would have been prejudicial to the plaintiff. The trial justice therefore did not err in refusing such instruction. Exception 47 is overruled.

Defendant also requested the trial justice to give the following charge and it was denied. "If you find from the evidence that the plaintiff knew or as a reasonable man should have known of the heaviness of this barrel and also knew or as a reasonable man should have known that he did not have the strength and experience to move the barrel without putting himself in danger of injury then you may consider plaintiff's conduct in proceeding to move the barrel as evidence of negligence on his part contrib-

uting to the plaintiff's injury and hence bar him from recovery." Such denial is the basis of exception 54. Little consideration need be given to this exception. It is obvious that the request does not state a situation which is fairly referable to the evidence. Plaintiff did not attempt to lift the barrel alone. His strength and experience for such a service was therefore not a matter for the jury's consideration. It would have seriously tended to confuse them if they had been so instructed. This exception is overruled.

The trial justice charged the jury substantially that what happened prior to the time of the accident when the elevator was at the ground floor was "of no importance in the case except as it may assist you in determining what happened later on." Under its exception 35 defendant contended that this was error because it was thereby deprived of "its right to have the jury consider whether plaintiff was ordered to help defendant's servant because it served the convenience of plaintiff's employer rather than because assistance was asked for by defendant's servant." We think this contention is without merit. The evidence is that Madieros told Leo Bojar that the barrel was too heavy for him to handle and also that he accepted plaintiff's assistance without question. In those circumstances it must be obvious that whether he expressly requested such assistance is immaterial. It is equally immaterial whether Bojar Company's convenience was also served by having the barrel picked up and delivered so long as it was the duty of defendant to perform the service pursuant to its undertaking with Handy & Harman. See *Schiano* v. *McCarthy Freight System, Inc., supra.,* at page 459. Defendant's exception 35 is overruled.

Defendant takes further exception to a portion of the charge where the trial justice similarly instructed the jury that in view of the evidence in the case they were confronted with determining the question of negligence only from the time when the elevator had reached the first floor level. In our opinion this was correct as the question

of the negligence of the defendant's driver Madieros, in so far as it concerned the plaintiff, was to be determined from the time the latter actively cooperated with Madieros in accordance with his instructions and under his supervision. Exception 36 is overruled.

The trial justice denied a series of requests to charge in which the defendant sought to have the jury instructed as to their duty to determine on the evidence before them whether there was an emergency which made it necessary for defendant's driver Madieros to obtain assistance or whether he otherwise had the authority to accept assistance in performing the duties of his employment. These questions arise under defendant's exceptions 43, 45, 49, 50, 51, 52 and 53 and have been briefed and argued together under one point. We find no merit in any of them. The reason is to be found in our opinion in *Schiano* v. *McCarthy Freight System, Inc., supra,* wherein we pointed out the ground of defendant's liability to plaintiff even though he did not become its servant and irrespective of any emergency. Therein we observed that the picking up of the barrel at Bojar Company's shop and delivering it to Handy & Harman was an undertaking in which they and defendant all had a common interest, and that if plaintiff as a servant of Bojar Company and at its command participated in the handling of the barrel and the negligence of defendant's driver was the proximate cause of plaintiff's injury defendant would be liable. All of the above exceptions are, therefore, overruled.

Defendant contended in the superior court that there was no evidence in the record of any injury to plaintiff's back and therefore moved that plaintiff's bill of particulars in which a back injury was set out be excluded from the jury. This motion was denied. Later defendant requested the trial justice to charge the jury specifically not to consider the back injury set out in the bill of particulars. This request was refused. These rulings are the subjects of defendant's exceptions 32 and 41. They are both without

merit principally because there is some evidence in the record, however slight, of an injury to plaintiff's lower back. True, it is not as definite and precise as it might be and is possibly open to doubt as to whether the pain testified to by the plaintiff was in his leg only and not in his back, but this uncertainty affects merely the weight of that testimony. We are not justified in finding that there was no evidence at all of a back injury and therefore we cannot say it was error for the trial justice to leave that issue to the jury. Exceptions 32 and 41 are overruled.

Defendant has grouped a series of objections to the trial justice's rulings excluding certain questions propounded by its counsel in cross-examining the plaintiff for the purpose of discrediting and impeaching him. These objections are presented here under defendant's exceptions 9, 12, 15, 16 and 17. Defendant has grouped such exceptions under one point and has briefed and argued them together. From our reading of the transcript we cannot say that the trial justice erred in his rulings. In any event, assuming that any of the questions were proper, we are of the opinion that their exclusion did not harm the defendant in the circumstances here. The evidence which they sought to elicit referred to another accident which plaintiff suffered in the course of employment which was subsequent to the period for which he is claiming damages for loss of wages. Such evidence could have no effect on the very limited loss of earnings which he set out in his bill of particulars and which he claimed to have sustained previous to such later employment. All of these exceptions are overruled.

After the jury returned a verdict for the plaintiff for $2500 defendant moved for a new trial on the grounds that it was against the law, against the evidence, against the law and the evidence and the weight thereof and also because of certain evidence newly discovered since the trial. However, there was no affidavit in support of such evidence and therefore defendant was not entitled to consideration

on that ground. This motion was denied by the trial justice who carefully reviewed the evidence in the record and expressly approved the verdict. In accordance with our well-established rule we cannot disturb his decision unless it appears from a consideration of all the evidence that it is clearly wrong. *Murphy* v. *Palmer,* 73 R. I. 182; *Hovas* v. *Cirigliano,* 70 R. I. 227. From our examination of the transcript we cannot say that the trial justice's decision was clearly wrong, and this exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for plaintiff.

*William H. McSoley, Jr.,* for defendant.